ON APPLICATION FOR REHEARING
MADDOX, Justice.
This Court’s opinion of May 17, 1991, is withdrawn and the following is substituted therefor.
These are consolidated appeals. A hospital appeals from a judgment entered upon a jury verdict awarding a plaintiff wife $350,000 in compensatory damages for negligence in treating her while she was a patient in the hospital. The hospital makes several claims of error: 1) that the trial judge should have reduced the judgment against it to $100,000, the statutory “cap”;[1] 2) that the trial court erred in instructing the jury; and 3) that the verdict *1362 was excessive and against the weight and preponderance of the evidence.
The plaintiff husband, who had filed a derivative claim for the loss of his wife’s services and consortium, also appeals, claiming that the verdict of the jury that found in his favor but awarded him zero damages was inconsistent and that he is entitled to a new trial to establish his damages.
Facts
In October 1984 Betty Owens was admitted to Northeast Alabama Regional Medical Center (“the Medical Center”) by Dr. A.N. Taylor for a closed shoulder manipulation on her left shoulder. Dr. Taylor placed Mrs. Owens under general anesthesia and, using force, loosened the adhesions in the shoulder that were limiting her shoulder movement. After surgery, her arm was placed in traction above and behind her head. After she returned to her room she began to experience numbness in her hand and a tingling sensation in her fingers.
Nurses visited Mrs. Owens over 34 times in the first 24 hours following surgery, performing various tests and neurovascu-lar assessments, including looking at the hand and checking her wrist and finger movement, motor function, pulse, the appearance of the hand, and feeling in her fingers. Mrs. Owens immediately complained to the nurses of the numbness in her hand and tingling in her fingers and continued to relate the worsening of that condition to the nurses throughout the day and night. At eight o'clock in the morning on the day after surgery, Dr. Taylor checked Mrs. Owens’s arm, checked her fingers, and talked to her and, finding nothing unusual, put the arm back in traction. It was not until two hours later that the physical therapist removed Betty Owens’s arm from traction and discovered that it was paralyzed. Dr. Taylor diagnosed her injury as a brachial plexus stretch injury caused by a stretching of the nerves in her left arm while her arm was in traction.
Mrs. Owens and her husband, James Owens, sued the Medical Center, Dr. Taylor, and Anniston Orthopedic Associates. Mrs. Owens claimed permanent neurological injuries to her arm and shoulder as a result of the “frozen shoulder” operation performed at the Medical Center by Dr. Taylor, a partner of Anniston Orthopedic Associates. James Owens sought damages for loss of his wife’s services and consortium.
The jury returned a verdict in favor of Dr. Taylor and Anniston Orthopedic Association. It found in favor of Betty Owens against the Medical Center and assessed her damages at $350,000. The jury also returned a verdict in favor of James Owens against the Medical Center, but assessed his damages at zero dollars.
The Medical Center’s motions for JNOV and new trial and its motion to reduce the verdict were denied. The trial court also denied James Owens's motion for new trial and, in regard to his claim, entered a judgment in favor of the Medical Center. Both the Medical Center and James Owens appeal.
Issues Presented on the Medical Center’s Appeal
The Medical Center presents several issues on appeal:
(1) Whether the trial court committed reversible error in denying the Medical Center’s motion to reduce the verdict of the jury in accordance with the provisions of Ala.Code 1975, § 11-93-2.[2]
(2) Whether the trial court committed reversible error in refusing the Medical Center’s written requested jury charge regarding proximate causation.
(3) Whether the Medical Center is entitled to a judgment notwithstanding the ver- *1363 diet or a new trial on the ground that the verdict was the result of bias or prejudice on the part of the jury.
(4) Whether the Medical Center is entitled to a judgment notwithstanding the verdict or a new trial on the ground that the verdict was against the weight and preponderance of the evidence.
Issues on the Husband’s Appeal
James Owens contends that the trial court committed reversible error in entering judgment in favor of the Medical Center based upon a holding that a verdict in the amount of $0.00 is the same as a determination that Mr. Owens suffered no damages. Because his claim for loss of services and loss of consortium is derivative, we will first address the issues presented by the Medical Center.
Whether the trial court committed reversible error in denying the Medical Center’s motion to reduce the verdict of the jury in accordance with the provisions of Ala.Code 1975, § 11-93-2.
What effect does § 11-93-2 have upon the plaintiff’s judgment of $350,000 against the Medical Center? Stated differently, does the $100,000 statutory cap on the judgment creditor’s right of recovery against the Medical Center actually reduce the judgment to $100,000?
The Medical Center asked the trial court to reduce the judgment to $100,000, but the trial court, although indicating that he thought the Medical Center was a governmental entity within the meaning of § 11-93-1,[3] declined to accept evidence of its status as a governmental entity because, it held, the statutory cap would not be operative until there was an execution on the judgment. The trial court cited Nowlin v. Druid City Hospital Bd., 475 So.2d 469 (Ala.1985) (“Nowlin I”) as authority for its holding that the motion of the Medical Center was premature because no attempt had been made by the plaintiff to execute on the judgment. We conclude that the trial court failed to give effect to the latest expression of this Court regarding the Nowlin I case. After reviewing this court’s holding in Nowlin I and its progeny, we hold that the trial court erred in its determination that the application of the statutory cap was not operative until there was an execution on the judgment.
In Nowlin I, this Court reinstated a jury award of $500,000 in a wrongful death action against a governmental entity, holding as follows:
“The statute sets forth the maximum amount of damages recoverable against a governmental entity. It does not, however, limit the amount of the judgment. Section 11-93-2 only becomes operative when a plaintiff attempts to execute on the judgment.”
Id. at 471. It is apparent that the learned trial judge gave full force to this statement in Nowlin I and did not consider this statement in light of this Court’s decision in St. Paul Fire & Marine Insurance Co. v. Nowlin, 542 So.2d 1190 (Ala.1988) (“Now-lin II”).
After the administrator of the decedent’s estate in Nowlin I instituted garnishment proceedings against the hospital board’s insurer for the additional $400,000, this Court clarified Nowlin I and held that the hospital board could not be indebted for more than it was statutorily obligated to pay, and held that the hospital’s liability insurance carrier, St. Paul Fire & Marine Insurance Company, was not obligated to pay more than $100,000. Nowlin II. Although Nowlin II did not specifically overrule Nowlin I, Nowlin II specifically holds that a judgment against a governmental entity, by virtue of § 11-93-2, was effec *1364 tively reduced from $500,000 to $100,000. In practicality, Nowlin II sets a cap on the amount of a judgment, because one cannot execute on a judgment in an amount greater than $100,000. In fact, the statute specifically provides that “[n]° governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth.” Section 11-93-2.
We hold that the trial court erred in its determination that the application of the statutory cap was not operative until there was an execution on the judgment. Because we so hold, we must remand the case for the trial court to determine whether the Medical Center was a governmental entity according to the provisions of § 11-93-1. If the trial court finds that the Medical Center is a governmental entity within the meaning of the statute, then the trial court must reduce the verdict to a sum not exceeding $100,000, plus interest, in conformance with § 11-93-2.
Whether the trial court committed reversible error in refusing the Medical Center’s written requested jury charge regarding proximate causation.
The Medical Center argues that the trial court erred in refusing the following requested jury charge:
“The Court charges the jury that in the event you find that the Defendant in this case breached the standard of care, the Plaintiffs are not entitled to recover unless such breach of the standard of care proximately resulted in injury to the plaintiff, BETTY OWENS.”
In order for a party to preserve for review an error in the court’s failing to give a certain jury instruction, it must make a timely objection and must state the grounds with sufficient clarity and specificity to call the error to the court’s attention. Ala.R.Civ.P. 51; Coleman v. Taber, 572 So.2d 399 (Ala.1990); McElmurry v. Uniroyal, Inc., 531 So.2d 859 (Ala.1988). At the close of the trial court’s instructions to the jury, the Medical Center’s lawyer said:
“The hospital is satisfied with the exception of reserving an exception to those requested charges and not giving the requested charges.”
While we recognize that the rule does not require undue technical specificity, this “[reservation of] an exception” to the trial court’s oral instructions was too general to give the trial court an opportunity to correct any errors that it may have made. See Coleman, 572 So.2d 399; McElmurry, 531 So.2d 859. The Medical Center had requested 25 written instructions. Its “exception” refers to all of the refused instructions as a whole. Indeed, the trial court could have reasonably believed that the exception was based upon the fact that the trial court refused to give any of the individual instructions rather than the failure to give one specific instruction. Because the Medical Center did not state with sufficient clarity and specificity its objections to the trial court’s failure to give the requested charge, we cannot reverse because of this alleged error. Ala.R.Civ.P. 51.
Even assuming that the Medical Center properly preserved its objection to the denial of the requested jury instruction, the trial court did not err in refusing that instruction, because the subject was substantially and fairly given to the jury in other instructions. See Herrington v. Central Soya Co., 420 So.2d 1 (Ala.1982). During its instructions to the jury, the trial court stated:
“This presents, then, for your determination, ladies and gentlemen, the following. First of all, were the defendants or either of them negligent as claimed by the plaintiffs.? If so, the next question is, was such negligence of either or both of the defendants the proximate cause of any injury or damage sustained by the plaintiffs as claimed? ....
“Now, if either of the above stated elements or issues [is] not proven to your reasonable satisfaction as to the defendant ... hospital, then your verdict should be in favor of the hospital.
[[Image here]]
“In order for a plaintiff to recover against a defendant on account of alleged negligence of that defendant, the law says first there must have been a duty owed by that defendant to the plaintiff. Secondly, there must have been a violation or a dereliction in that duty. *1365 And thirdly, an injury or damage must have resulted to the plaintiff caused by or as a direct and proximate result or consequence of the [violation of the] duty owed by the defendant to that plaintiff.”
After the trial court defined proximate cause to the jury, the court further explained:
“You will first ask yourself, with reference to the hospital, did the hospital breach or fail to fulfill its duty in regard to Betty Owens? If you are not reasonably satisfied that it did, then you would go no further regarding the hospital, and you would render a verdict in its favor. If you are reasonably satisfied that the hospital did breach its duty, then you must next ask yourself if that breach of duty proximately caused personal injury and damages to Betty Owens.
“If you are not reasonably satisfied that any breach on the part of the hospital proximately caused such injury to Betty Owens, then you would go no further regarding the hospital, and you would render a verdict in its favor.”
A comparison of the refused instruction with the trial court’s oral charge reveals that the trial court gave the jury substantially the same instruction that the Medical Center had requested. Consequently, the hospital has failed to show that the oral charge was either incorrect, incomplete, or misleading. Based on these facts and circumstances, we hold that the hospital is not entitled to a new trial on that ground. Herrington, 420 So.2d 1. Even if the alleged error had been properly preserved, we would still hold that the trial court did not err in refusing to give the requested instruction.
Whether the Medical Center is entitled to a judgment notwithstanding the verdict or a new trial on the ground that the verdict was the result of bias or prejudice on the part of the jury.
The Medical Center argues that the jury “verdict [in favor of Betty Owens] was against the weight and preponderance of the evidence” and therefore that the trial court committed reversible error by denying the Medical Center’s motion for JNOV, motion for new trial, and motion to reduce the jury’s verdict.
The thrust of Mrs. Owens’s charge against the Medical Center was as follows:
“Following surgery, plaintiff complained of pain and numbness in her arm to the nurses. The nurses, plaintiff claims, fell below the standard of care in (1) failing to perform complete and regular neuro-vascular tests on plaintiff, and (2) in failing to contact DR. TAYLOR with plaintiff’s continued complaints.”
The evidence was significantly disputed as to what constituted a satisfactory neuro-vascular test and whether the nurses performed enough neurovascular tests on Betty Owens during the 24 hours following surgery and whether those tests were complete.
The Owenses’ expert witness, Dr. Byron A. Genner III, M.D., testified that placing the arm in traction and Dr. Taylor’s failure to prescribe regular neurovascular tests and his failure to check her condition amounted to treatment below the applicable standard of care. He further testified that the nurses should have performed the neurovascular tests more completely. Nurse Ann Bailey-Alien, testifying as an expert, stated that the nurses should do regular neurovascular tests whether the doctor orders them to or not, and that the failure to perform these tests completely fell below the required standard of care.
Experts for the defendant testified that tingling and numbness are not uncommon after surgery, and that there was nothing in the hospital records to indicate negligence in the nursing care of Mrs. Owens.
When the evidence is in dispute, the general rule is that a jury verdict is entitled to a strong presumption of correctness. Hickox v. Vester Morgan, Inc., 439 So.2d 95 (Ala.1980). Only if the findings before the jury were against the great weight of the evidence should the trial court grant a motion for a new trial. Jackie Fine Arts, Inc. v. Berkowitz, 448 So.2d 318 (Ala.1984). In determining the propriety of a JNOV or a new trial order, we must review the entire evidence and indulge every reasonable inference in favor of the nonmoving party, here Betty Owens. Caterpillar Tractor Co. v. Ford, 406 So.2d 854 (Ala.1981).
*1366 When viewed in the light most favorable to Betty Owens, we hold that the jury could have reasonably determined that the Medical Center breached its duty of care and that its breach was the proximate cause of her injuries. Furthermore, the trial court’s denial of the Medical Center’s motion for a new trial strengthens the presumption that the jury verdict was correct. See Pierce v. Rummel, 535 So.2d 594 (Ala.1988).
We find no error or abuse of discretion by the trial court in denying the motion for JNOY or new trial. The jury resolved any conflict in the evidence in favor of Betty Owens, and we will not disturb that determination.
Whether the Medical Center is entitled to a judgment notwithstanding the verdict or a new trial on the ground that the verdict was against the weight and preponderance of the evidence.
In its fourth and final argument, the Medical Center argues in the alternative that, even if we should not agree with it on its other arguments, the $350,000 verdict was excessive, and it argues that a new trial should be granted unless the Ow-enses agree to a remittitur of all amounts in excess of $150,000. We disagree with the hospital on that argument.
“It has long been the rule in Alabama that jury verdicts carry with them a presumption of correctness, and that this presumption is strengthened when the trial court denies a motion for new trial.” Alfa Mut. Ins. Co. v. Northington, 561 So.2d 1041, 1048 (Ala.1990). The appellate courts of this state do not favor setting aside a verdict for damages if doing so can be avoided. Stinson v. Acme Propane Gas Co., 391 So.2d 659 (Ala.1980). The invocation of our statutory authority to determine the proper amount of recovery[4] is dependent upon a clear showing that the jury verdict is the product of bias, passion, prejudice, corruption, or other improper motive. City Bank of Alabama v. Eskridge, 521 So.2d 931 (Ala.1988). There is no evidence before this Court of any misconduct, bias, passion, prejudice, corruption, improper motive, or cause not consistent with the truth and the facts. Therefore, we have no statutory authority to invade the province of the jury in this case to set aside the verdict. Because the hospital has failed to overcome the presumption of correctness attached to the jury verdict, we hold that the trial court did not err in refusing to order a remittitur on the ground that the verdict was excessive.
Whether the trial court committed reversible error in entering judgment in favor of the Medical Center based upon a holding that a verdict in the amount of $0.00 is the same as a determination that James Owens suffered no damages.
The jury returned a verdict in favor of James Owens, but assessed no damages. The trial court held that a verdict for the amount of $0.00 is the same as a determination that Mr. Owens suffered no damages—a finding of damage or injury is a prerequisite to a verdict in his favor—and entered judgment in favor of the Medical Center. The trial court then denied Mr. Owens’s motion for new trial on the issue of damages. We hold that the trial court erred in denying his motion for new trial, for the law is clear that an award of no compensation to the plaintiff is not, in fact, a verdict for the defendant. See Moore v. Clark, 548 So.2d 1352 (Ala.1989); Stinson, 391 So.2d 659. Such an inconsistent verdict cannot stand. Therefore, we reverse that portion of the trial court’s judgment in favor of the Medical Center on James Owens’s derivative claim and remand the cause for further proceedings consistent with this opinion.
Summary of Holdings
In summary, we hold that the trial court erred in its determination that the application of the statutory cap was not operative until there was an execution on the judgment, and we remand the case for the trial court to determine whether the Medical Center is a governmental entity according to the provisions of § 11-93-1. However, we also hold that the trial court did not err in refusing the Medical Center’s written requested jury instruction regarding proxi *1367 mate causation. In addition, we uphold the jury verdict for the wife, finding no bias or prejudice on the part of the jury, and we hold that that verdict was not against the weight and preponderance of the evidence and that a judgment could be entered upon it but for the provisions of § 11-93-2. Finally, we hold that the trial court erred in entering a judgment in favor of the Medical Center on the husband’s derivative claim.
ORIGINAL OPINION WITHDRAWN; OPINION SUBSTITUTED; APPLICATION FOR REHEARING OVERRULED.
89-1590 AFFIRMED IN PART, AND REMANDED.
89-1635 REVERSED AND REMANDED.
HORNSBY, C.J., and SHORES, ADAMS, HOUSTON, STEAGALL and KENNEDY, JJ., concur.

. Ala.Code 1975, § 11-93-2.

. Ala.Code 1975, § 11-93-2:
"The recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for bodily injury or death for one person in any single occurrence.... Recovery of damages under any judgment against a governmental entity shall be limited to $100,000.00 for damage or loss of property arising out of any single occurrence. No governmental entity shall settle or compromise any claim for bodily injury, death or property damage in excess of the amounts hereinabove set forth.”

. Section 11-93-1 defines "governmental entity” as follows:
"(1) GOVERNMENTAL ENTITY. Any incorporated municipality, any county and any department, agency, board or commission of any municipality or county, municipal or county public corporations and any such instrumentality or instrumentalities acting jointly. ‘Governmental entity’ shall also include county public school boards, municipal public school boards, and city-county school boards when such boards do not operate as functions of the state of Alabama. ‘Governmental entity’ shall also mean county or city hospital boards when such boards are instrumentalities of the municipality or county or organized pursuant to authority from a municipality or county.”

. Upon finding a jury verdict to be excessive, the trial court, pursuant to Ala.R.Civ.P. 59(f), and this Court, pursuant to Ala.Code 1975, § 12-22-71, may interfere with it.